1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DIRECTV, LCC,                              No. 2:14-cv-2563-JAM-KJN PS

12                  Plaintiff,

13          v.                                  <u>ORDER AND FINDINGS AND
                                                RECOMMENDATIONS</u>
14   JOHN W. SCOTT,

15

16                  Defendant.

17

18          Presently pending before the court is plaintiff DIRECTV, LLC's ("plaintiff") motion for

19   default judgment against defendant John W. Scott, individually and d/b/a Scotty's Boat Landing

20   ("defendant"), who is the only named defendant in this action.  (ECF No. 20.)[1]  Defendant failed

21   to oppose the motion in accordance with Local Rule 230(c).  For the reasons that follow, the court

22   recommends that the motion be GRANTED IN PART on the terms outlined below.[2]

23   I.     <u>BACKGROUND</u>

24          Plaintiff is a major distributor of satellite programming doing business throughout the

25   United States.  (<u>See</u> Complaint, ECF No. 2 ["Compl."] ¶ 5.)  Plaintiff provides its satellite

26   _____

     [1] This action proceeds before the undersigned pursuant to E.D. Cal. L.R. 302(c)(21).

27
     [2] The motion was deemed suitable for resolution without oral argument on the record and written
28   briefing pursuant to Local Rule 230(g).  (ECF No. 22.)

                                                    1

1   programming to paying subscribers by way of encrypted satellite transmissions.  (Compl. ¶¶ 5,

2   15.)  Commercial establishments pay higher subscription rates/fees than residential customers.

3   (Compl. ¶ 16; see also Affidavit of Kent P. Mader, ECF No. 20-1 ["Mader Aff."] ¶¶ 6, 8.)

4        On November 3, 2014, plaintiff initiated this action against defendant, who is alleged to

5   be the owner and person with supervisory control of a commercial establishment and

6   restaurant/bar known as Scotty's Boat Landing, located at 12609 River Road in Chico, California.

7   (Compl. ¶¶ 6-8, 10-12.)  Plaintiff claims that, on or about November 3, 2013, defendant received

8   and displayed plaintiff's satellite programming (in particular, National Football League games

9   only available through plaintiff's premium "NFL Sunday Ticket" service) to the public at Scotty's

10  Boat Landing using defendant's residential account, and without obtaining a valid commercial

11  account with commercial exhibition rights or otherwise obtaining plaintiff's permission.  (Compl.

12  ¶¶ 17-19, 23; Mader Aff. ¶¶ 7, 9-14.)  Plaintiff alleges that defendant acted willfully and

13  displayed such programming for commercial advantage or private financial gain, in violation of,

14  inter alia, 47 U.S.C. § 605.[3]  (Compl. ¶¶ 13, 18-19.)

15       On January 5, 2015, defendant filed what the Clerk of Court liberally construed and

16  docketed as an answer to the complaint.  (ECF No. 5.)  However, in an April 17, 2015 order, the

17  court struck defendant's answer for failure to comply with the Federal Rules of Civil Procedure,

18  noting that:

> 19 Most of that document consists of plaintiff's original complaint, the
> 20 summons, and other initial case documents on which defendant has
> simply written the following on each page: "I do not consent to
> Respondent's offer to contract; I do not consent to Respondent's
> 21 jurisdiction; I do not consent to this proceeding."  Defendant also
> attached several pages of nonsensical commentary setting forth
> 22 Sovereign Citizen-type ideology.

23  (ECF No. 15.)  Nevertheless, the court granted defendant leave to file an amended answer that

24  complies with the Federal Rules of Civil Procedure within 21 days.  (Id.)  Defendant was

25  cautioned that "[f]ailure to file an amended answer by the required deadline OR failure to file an

---

26  [3] Plaintiff's complaint also alleges violations of other federal and state laws.  However, because
27  plaintiff's motion only seeks relief pursuant to plaintiff's claim under 47 U.S.C. § 605, the court
    need not address plaintiff's other claims in resolving the instant motion.

28

1    amended answer that complies with the Federal Rules of Civil Procedure will result in an order

2    striking that pleading and directing the Clerk of Court to enter defendant's default, whereupon

3    plaintiff will be permitted to move for a default judgment." (Id.)

4         On May 15, 2015, after defendant ultimately failed to file an amended answer by the

5    required deadline, the court directed the Clerk of Court to enter defendant's default, which the

6    Clerk of Court entered that same day.  (ECF Nos. 16, 17.)[4]  The instant motion for default

7    judgment followed on June 12, 2015.  (ECF No. 20.)  Plaintiff's motion seeks relief in the form of

8    statutory damages, attorneys' fees, and costs pursuant to 47 U.S.C. § 605, which were also

9    requested in the complaint.  (Compare ECF No. 20-8 at 11 to ECF No. 2 at 8.)

10   II.    LEGAL STANDARDS

11        Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party

12   against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend

13   against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

14   automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans,

15   238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25

16   (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies

17   within the district court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.

18   1980).  In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action[,] (5) the possibility of a
> dispute concerning material facts[,] (6) whether the default was due
> to excusable neglect, and (7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.

23   Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

24        As a general rule, once default is entered, well-pleaded factual allegations in the operative

---

[4] After the Clerk entered defendant's default, but prior to the filing of the instant motion for
default judgment, defendant on June 2, 2015, filed a "Mandatory Notice and Lawful Demand to
Plaintiff for a Definite Statement of Allegation of Bona Fide Jurisdiction."  (ECF No. 18.)  After
carefully reviewing that filing, the court finds that it is frivolous and that it cannot even be
liberally construed as a proper attempt to move the court to set aside the Clerk's entry of default.
As such, it has no impact on the court's resolution of the instant motion.

complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim").  A party's default does not establish the amount of damages.  Geddes, 559 F.2d at 560.

III.     PROPRIETY OF A DEFAULT JUDGMENT

The court first evaluates the Eitel factors to determine whether a default judgment should be entered.

        A.      *Factor One: Possibility of Prejudice to Plaintiff*

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would face prejudice if the court did not enter a default judgment, because plaintiff would be without another recourse against defendant.  Accordingly, the first Eitel factor favors the entry of a default judgment.

        B.      *Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint*

The court considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries.  The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

4

As noted above, plaintiff's motion only seeks relief based on plaintiff's claim under 47 U.S.C. § 605.  That statute provides, in pertinent part, that:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority.

47 U.S.C. § 605(a).  The Ninth Circuit Court of Appeals has determined that satellite television signals are covered communications under 47 U.S.C. § 605(a).  DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008).  That statute grants a civil private right of action to a person aggrieved by its violation.  See 47 U.S.C. § 605(e)(3)(A) ("Any person aggrieved by any violation of subsection (a) of this section…may bring a civil action in a United States district court or in any other court of competent jurisdiction.").

In this case, plaintiff alleged that defendant, having received plaintiff's satellite programming through defendant's residential account, displayed such programming to the public at defendant's bar/restaurant on or about November 3, 2013, without obtaining a valid commercial account with commercial exhibition rights.  Defendant was thus not authorized to display plaintiff's satellite programming to the public at his commercial establishment, which is required to pay a higher fee to receive and legitimately display plaintiff's satellite programming to its patrons.  In light of those allegations, the court finds that plaintiff's claim for a violation of 47 U.S.C. § 605(a) is sufficiently pled and has merit.  As such, the second and third Eitel factors favor the entry of a default judgment.

C.      Factor Four: The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D.

Cal. 2003).  By way of the instant motion, plaintiff seeks $110,000.00 in total statutory damages, as well as attorneys' fees and costs.  (ECF No. 20.)  Given the substantial amount of money at stake, this factor could potentially weigh against the entry of default judgment.  However, as discussed in greater detail below, the court declines to recommend judgment in the large amount requested.  Consequently, the fourth Eitel factor ultimately also weighs in favor of the entry of default judgment.

   D. *Factor Five: The Possibility of a Dispute Concerning Material Facts*

    Because the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default, there is no likelihood that any genuine issue of material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  As such, the court concludes that the fifth Eitel factor favors a default judgment.

   E. *Factor Six: Whether the Default Was Due to Excusable Neglect*

    In this case, there is simply no indication in the record that defendant's default was due to excusable neglect.  To the contrary, despite being granted an opportunity to file a proper amended answer, defendant failed to comply with the court's clear order and instructions, and persisted in submitting frivolous filings.  Accordingly, this Eitel factor favors the entry of a default judgment.

   F. *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

    "Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

1    In sum, after carefully considering and weighing all the <u>Eitel</u> factors, the court concludes

2    that plaintiff is entitled to a default judgment against defendant, and recommends that such a

3    default judgment be entered.  All that remains is a determination of the specific relief to which

4    plaintiff is entitled.

5    IV.    <u>TERMS OF THE JUDGMENT TO BE ENTERED</u>

6    After determining that a party is entitled to the entry of default judgment, the court must

7    determine the terms of the judgment to be entered.  In this case, plaintiff requests an award of

8    $110,000.00 in total statutory damages, as well as $5,496.50 in attorneys' fees and costs, based on

9    defendant's violation of 47 U.S.C. § 605.  (ECF No. 20.)  Although the court has before it no

10   specific objections by defendant as to the amount requested, one of the factors the court is free to

11   consider in exercising its discretion to grant default judgment is the sum of money to be awarded.

12   See J & J Sports Prods., Inc. v. Jurado, 2011 WL 6153605, at *3 (E.D. Cal. Dec. 12, 2011).

13   Considering plaintiff's briefing and the record in this case, the court recommends that the

14   requested relief be awarded, but not in the amounts requested.

15   A.    *Statutory Damages*

16   For purposes of a 47 U.S.C. § 605 claim, a plaintiff may elect to seek either actual or

17   statutory damages.  47 U.S.C. § 605(e)(3)(C)(i)(I & II).  The statute generally provides for

18   statutory damages for each violation of not less than $1,000 and not more than $10,000, as the

19   court considers just.  47 U.S.C. § 605(e)(3)(C)(i)(II).  Plaintiff seeks the maximum award of

20   statutory damages of $10,000.  The statute also authorizes enhanced damages of not more than

21   $100,000 if the court finds the violation was "committed willfully and for purposes of direct or

22   indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).  Here,

23   plaintiff seeks the maximum of $100,000 in enhanced statutory damages, for a total of $110,000.

24   In support of its request, plaintiff argues that the requested amount is justified primarily

25   because of plaintiff's purportedly significant loss of revenue as a result of commercial

26   misappropriation of plaintiff's programming obtained through residential accounts, as well as the

27   disadvantage placed upon legitimate commercial subscribers who have to compete with

28   businesses that unlawfully acquire programming without paying the commercial rates.  (Mader

7

Aff. ¶ 16.)  Although deterrence of such conduct is certainly an important consideration, the court finds plaintiff's requested damages to be excessive and unsupported by the record here.

Plaintiff submitted an affidavit by its auditor, who visited defendant's commercial establishment on November 3, 2013, at approximately 3:03 p.m., with photographs and video footage of the commercial establishment.  (See Affidavit of Ilir Nushi, ECF No. 20-2 ["Nushi Aff."]; see also ECF No. 20-3 [video footage lodged with court] & ECF No. 20-4 [photos].)  Plaintiff's auditor noted that the maximum capacity of the establishment was about 101-200 patrons, that a DIRECTV satellite dish and several other satellite dishes were present, and that the establishment contained about 20 televisions, several of which displayed plaintiff's programming, whereas others were turned off.  (Nushi Aff.)  The video footage lodged with the court generally confirms the auditor's observations, but also indicates that there were likely fewer than 10 patrons at the establishment at the time the video was recorded.  (See ECF No. 20-3.)

To be sure, as discussed above, the record before the court establishes that defendant violated 47 U.S.C. § 605 on November 3, 2013.  Additionally, plaintiff's allegation that the violation was committed willfully and for commercial advantage or private financial gain is supported by the fact that defendant showed plaintiff's programming at his restaurant/bar, which had a DIRECTV satellite dish and several other satellite dishes, for the benefit of paying customers.  Nevertheless, plaintiff has provided no evidence that defendant specifically promoted the airing of plaintiff's programming at the establishment, that there was a cover charge for entry, or that a special premium on food and drink was charged on the day that plaintiff's programming was displayed.  Indeed, with fewer than 10 patrons in a 101-200 patron establishment at the time the video submitted by plaintiff's auditor was taken, it is highly unlikely that defendant's restaurant/bar was doing any greater level of business on the day that plaintiff's programming was shown than at any other time.  Plaintiff also did not provide evidence of any previous violations of 47 U.S.C. § 605 by defendant.

In light of this record, which lacks evidence of defendant reaping any significant commercial advantage or private financial gain from his unauthorized use of plaintiff's programming, the court recommends that plaintiff be awarded $1,000 in statutory damages

pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).  Additionally, the court recommends that plaintiff be awarded an additional $3,000 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), for a total of $4,000 in statutory damages, which the court finds appropriate under the circumstances here.  See J & J Sports Productions, Inc. v. Jurado, 2011 WL 6153605, at **3-4 (E.D. Cal. Dec. 12, 2011) (collecting awards in similar cases; awarding $1,000 in statutory damages and $3,000 in enhanced statutory damages in a default judgment where the defendant was not a repeat offender, and where the investigator observed a higher number of patrons [23-35] inside the establishment, but where the establishment had a smaller capacity [60 persons] and a lesser number of television sets).

B.    *Attorneys' Fees and Costs*

In a civil action for violation of 47 U.S.C. § 605(a), the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 605(e)(3)(B)(iii).  Here, plaintiff  seeks a total amount of $5,496.50 in attorneys' fees and costs, consisting of $4,751.50 in attorneys' fees and $745.00 in costs.  (See Affidavit of Christopher J. Hufnagel, ECF No. 20-6 ["Hufnagel Aff."] at 4.)

With respect to costs, plaintiff requests its filing fee of $400.00 and a service of process fee of $345.00, for a total of $745.00, which the court finds appropriate and should be awarded. (Hufnagel Aff. at 4; see also ECF No. 20-7.)

As to attorneys' fees, the billing records submitted by plaintiff show that counsel spent a total of 25.35 hours on the preparation and prosecution of the case, which includes minimal time spent by a law firm partner at an hourly rate of $350.00, and most of the time spent by an associate attorney, local counsel, and a paralegal, billing at hourly rates of $250.00, $175.00, and $95.00, respectively.  (Hufnagel Aff. at 4-8.)  After reviewing the billing records, the court finds the hourly rates and time spent to be reasonable.   However, because the motion was submitted without oral argument, the court deducts the 6 hours local counsel estimated he would have spent to prepare for and attend the hearing on the instant motion, for a total deduction of $1,050.00 (6 hours multiplied by hourly rate of $175.00).  The court concludes that the remaining $3701.50 in attorneys' fees should be awarded.

Therefore, the court recommends that plaintiff be awarded a total of $4,446.50 in attorneys' fees and costs.

V.     CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.     Plaintiff's motion for default judgment (ECF No. 20) be GRANTED IN PART.

2.     Judgment be entered in plaintiff's favor and against defendant.

3.     Plaintiff be awarded a total of $4,000.00 in statutory damages.

4.     Plaintiff be awarded attorneys' fees and costs in the amount of $4,446.50.

5.     The Clerk of Court be directed to close this case.

IT IS ALSO HEREBY ORDERED that plaintiff shall forthwith serve a copy of this order and findings and recommendations on defendant by U.S. mail at defendant's last-known address, and file a proof of service.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

Dated:  August 3, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE